## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KAREN SMITH, ET AL.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NUMBER: 07-3314** |
| **LAW OFFICES OF MICHAEL J. SAMANIE, ET AL.** | * | **SECTION "L" (3)** |

### ORDER & REASONS

Before the Court is a Motion for Summary Judgment (Rec. Doc. 14) filed by the defendants Michael J. Samanie and his law office ("Samanie") which seeks clarification on the applicable substantive law in this legal malpractice case. For the following reasons, the Court finds that Mississippi substantive law governs this case and, therefore, Samanie's motion will be GRANTED IN PART and DENIED IN PART.

**I.    BACKGROUND**

This legal malpractice case was filed by Karen Smith, individually and on behalf of her late husband Stanlus Smith, and her minor child John Smith ("plaintiffs") in this Court pursuant to diversity jurisdiction under 28 U.S.C. § 1332. The case arises out of the alleged legal malpractice of the Samanie defendants in handling the wrongful death claim of Karen Smith's late husband. Karen Smith and her child are both residents of Mississippi, as was Stanlus Smith. The events giving rise to Stanlus Smith's death allegedly occurred in Gulfport, Mississippi at Gulfport Memorial Hospital on July 2, 2005.

On or about April 12, 2006, Karen Smith retained Samanie for representation in

1

connection with a medical malpractice claim for the alleged wrongful death of her husband. Samanie is a resident of Louisiana and is a Louisiana licensed attorney with an office in Houma, Louisiana. The attorney-client relationship between Smith and Samanie was reduced to writing on a document drafted by Samanie. Samanie faxed Smith a copy of the agreement at her home in Mississippi, which Smith then executed and faxed back to Samanie in Louisiana. Subsequently, Smith traveled to Samanie's office in Louisiana on at least three occasions to meet regarding the wrongful death claim. Samanie eventually traveled to Mississippi to inform Smith in person that her wrongful death claim had prescribed.

In this case, the plaintiffs have sued Samanie for legal malpractice for his alleged failure to timely file the wrongful death claim in Mississippi and for failing to retain Mississippi counsel to timely file suit. The parties agree that Mississippi substantive law applies to the underlying wrongful death claim and that the value of the underlying claim is capped at $500,000 as a result of the Mississippi Tort Claim Act ("MTCA"). *See* Miss. Code Ann. § 11-46-15. However, Samanie has filed a motion for summary judgment seeking clarification on two issues upon which the parties disagree. First, Samanie seeks a ruling from this Court that Mississippi substantive law also applies to the plaintiffs' legal malpractice claim. Second, Samanie contends that the plaintiffs' damages in this matter are capped at $500,000 in light of the MTCA. The plaintiffs oppose the motion and argue that Louisiana substantive law governs their legal malpractice claim and that their damages are not capped at $500,000 given that they may also be entitled to emotional or punitive damages.

**II.    ANALYSIS**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As noted above, the parties disagree about whether Mississippi or Louisiana substantive law governs the plaintiffs' legal malpractice claim and whether emotional or punitive damages are available. These are legal questions that are appropriately addressed on summary judgment.

**A.    Choice of Law**

A court must determine whether and to what extent the forum will recognize the interests of another state where "one or more of the parties are not residents of the forum or when legally significant facts occurred in a state other than the forum." *Santos v. Sacks*, 697 F. Supp. 275, 282 (E.D. La. 1988). Here the forum is Louisiana. But the plaintiffs are Mississippi residents. And the underlying wrongful death claim involved incidents at a Mississippi hospital by Mississippi doctors upon a Mississippi resident. Indeed, this legal malpractice case has arisen because a lawyer retained by a Mississippi resident for representation in Mississippi failed to timely file a wrongful death suit in Mississippi. Thus, there are sufficient non-forum contacts to initiate a choice-of-law analysis in this case.

It is also beyond dispute that a true conflict exists between Louisiana and Mississippi legal malpractice law. Under Louisiana law, a plaintiff makes out a prima facie case of legal malpractice upon establishing (1) that an attorney-client relationship existed and (2) that the attorney was negligent. *See Jenkins v. St. Paul Fire & Marine Ins. Co.*, 422 So. 2d 1109, 1110 (La. 1982). Louisiana law then shifts the burden to the defendant attorney to overcome the

plaintiff's prima facie case by showing that "the client could not have succeeded on the original claim." *Id.* However, Mississippi still utilizes the "case within a case" approach by requiring the plaintiff to demonstrate "(1) the existence of an attorney-client relationship, (2) negligent handling of the client's affairs by the attorney, and (3) that such negligence proximately caused injury to the client." *Blanton v. Prins*, 938 So.2d 847, 851 (Miss. Ct. App. 2005) (citing *Luvene v. Waldrup*, 903 So. 2d 745, 748 (Miss. 2005)).[1]

Once a true conflict between the forum and sister state's law is established, a federal court sitting in diversity employs the forum state's choice-of-law provisions. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Therefore, the Court must apply Louisiana's choice-of-law rules in this diversity action. Article 3515 of the *Louisiana Civil Code* governs the conflict of laws generally:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

La. Civ. Code Ann. art. 3515. Furthermore, because the plaintiffs' legal malpractice claim sounds in tort, Article 3542 also provides guidance in selecting the applicable substantive law:

---

[1] The parties spend a considerable amount of space in their briefing arguing about whether or not a true conflict of laws exists in this case. The Court feels it unnecessary to delve into these debates given the significant difference in the legal malpractice regimes of Louisiana and Mississippi.

> Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

La. Civ. Code Ann. art. 3542.

Cases employing Louisiana's choice-of-law rules are also instructive on how to properly assess which state's law should be applied and elucidates the fact-sensitive inquiry involved in such an assessment. For example, in *Santos v. Sacks*, 697 F. Supp. 275, 282-84 (E.D. La. 1988), the court applied Louisiana choice-of-law rules in deciding which states' laws would govern two related legal malpractice claims. With respect to the first claim, the court held that Florida law applied where the plaintiffs were residents of Florida, the defendant attorney was a resident of Pennsylvania, and the representation agreement was executed in Florida. *Id*. at 283. The court reasoned that allowing a Florida citizen to assert a malpractice action under Florida law for a contract executed in Florida protected the justified expectation of the parties and assured the predictability and uniformity of the law. *Id.* The court reasoned further that Florida had a manifest interest in protecting its citizens from malpractice and in requiring attorneys who contract with Florida citizens to perform in a satisfactory manner. *Id.* Conversely, with respect to the second claim, the court held that Louisiana law applied to a claim against a Louisiana attorney because he did not sign the representation agreement in Florida nor solicit the plaintiffs in Florida, but rather was merely included in the representation by the plaintiff's Pennsylvania

lawyer. *Id.* at 284. The court recognized Florida's interest in protecting its residents from legal malpractice by non-resident attorneys, but ultimately found the Louisiana lawyer's contacts with Florida too slight for Florida law to govern this claim. *Id.*

The United States Court of Appeals for the Fifth Circuit also addressed the application of Louisiana's choice-of-law rules in *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 488 (5th Cir. 2001). *Marchesani* involved a Tennessee resident who was injured while working in Tennessee by a machine that was manufactured by a Louisiana corporation. *Id.* at 484. Louisiana law required tort claims to be brought within one year of injury, while Tennessee law allowed such claims to be brought within ten years from first purchase for use. *Id.* at 489. The court focused on the question of which state's policies would be most seriously impaired if its statute of limitations were not applied. *Id.* at 489. The court decided that Tennessee's policies would be most impaired because the plaintiffs' claims would be barred under Louisiana law, but could proceed under Tennessee law. *Id.* The court reached its decision by focusing on the goals of Article 3542 to deter wrongful conduct and repair the consequences of injurious acts. *Id.*

The application of Louisiana's conflicts rules to the instant case leads the Court to conclude that Mississippi substantive law should apply to the plaintiffs' legal malpractice claim. Both Articles 3515 and 3542 suggest that the heart of the conflicts inquiry be a determination of which state's policies would be most seriously impaired if its law were not applied. In making this determination, Article 3515 calls for a general consideration of the relationship of each state to the parties and the dispute. Article 3542 supplements this general consideration with more specific factors including the events giving rise to the dispute, the place of conduct and injury, the residence or place of business, and the state in which the relationship between the parties was

centered.  Here, it is clear that Mississippi has the dominant relationship to the parties and to this dispute.  The plaintiffs are Mississippi residents and the events giving rise to this dispute occurred initially in Mississippi at a Mississippi hospital.  These events led Smith to execute an agreement in Mississippi with a lawyer to represent her in a case that was to be filed and tried in Mississippi under Mississippi law.  Louisiana's only relationship to the parties and the dispute is that Samanie is a Louisiana lawyer and that Smith came to Samanie's Louisiana office on at least three occasions regarding the wrongful death claim.

The application of Mississippi law based upon that state's relationship with the parties and the dispute is further supported by the holdings in *Santos* and *Marchesani*.  In *Santos*, as noted above, the court first held that Florida law applied to a legal malpractice claim filed by a Florida resident against a non-resident attorney where the representation contract was executed in Florida.  Similar factors are involved in the instant case.  Mississippi residents have filed a legal malpractice claim against a non-resident attorney and the representation agreement was executed in Mississippi.  *Santos*' application of Louisiana law to the second claim against a Louisiana attorney can be distinguished on the ground that the defendant in that case had essentially no contacts with Florida.  Here, Samanie's Louisiana residency does not stand alone, but is accompanied by the various contacts with Mississippi noted above.

Similarly, in *Marchesani* the court held that Tennessee law applied where the plaintiff was a resident of Tennessee who received his injury in Tennessee by a machine manufactured by a Louisiana corporation.  Again, the facts are fairly analogous to those in the instant case: the plaintiffs are residents of Mississippi, the wrongful death claim emanates from Mississippi, and the legal malpractice claim arises from Samanie's failure to timely file suit in Mississippi.  Given

the various contacts that this case has with Mississippi, surely Mississippi law would govern the plaintiffs' malpractice claim if instead of failing to timely file suit in Mississippi, Samanie had filed suit but, say, showed up to the proceedings drunk, incapacitated, or ill prepared and lost the case. It would be an odd result indeed if Louisiana law were to apply in the instant case solely by virtue of Samanie's failure to timely file suit.

Under the second part of the Louisiana's choice-of-law inquiry, Articles 3515 and 3542 require a consideration of the policies and needs of the interstate system. This consideration includes, under Article 3515, the policies of upholding the justified expectation of parties and minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state, and, under Article 3542, the policies of deterring wrongful conduct and of repairing the consequences of injurious acts. As in *Santos*, it is reasonable to conclude that the parties in this case had justified expectations to be subjected to Mississippi law for a case involving the failure of a lawyer who was retained in Mississippi to timely file suit in Mississippi for a claim that arose in Mississippi involving Mississippi residents. Moreover, the concern with deterring wrongful conduct and repairing the consequences of injurious acts also favors the application of Mississippi law because its residents are the alleged victims of malpractice in this case and Mississippi has a strong interest deterring non-resident lawyers from committing malpractice in the state. Thus, under Louisiana's choice-of-law rules, the Court finds that the plaintiffs' legal malpractice claim is governed by Mississippi law.

**B.   Damages**

As noted above, the parties also disagree on whether the plaintiffs' damages in this case must be capped at $500,000, as the damages in the underlying wrongful death claim would have

been capped, or whether the plaintiffs may also make claims for emotional distress and punitive damages. At this stage of the litigation, and in light of the recent decision in *Lancaster v. Stevens*, 961 So. 2d 768 (Miss. Ct. App. 2007), the Court finds that the plaintiffs' damages in this case are not necessarily capped at $500,000 and that the plaintiffs are not precluded from asserting claims for emotional or punitive damages.

## III.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that Samanie's Motion for Summary Judgment (Rec. Doc. 14) is GRANTED IN PART and DENIED IN PART as detailed above.

New Orleans, Louisiana, this 6th day of June, 2008.

_____
UNITED STATES DISTRICT JUDGE